Thomas **BAPTISTE**, Deceased, and Linda Baptiste, Petitioners

v.

WORKERS' COMPENSATION AP-PEAL BOARD (EICHLEAY COR-PORATION, Minnotte Corporation, Barletto Equipment Company, Dick Corporation, Songer Corporation, Voith Hydro, Inc. and Zack Company), Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 29, 2005.

Decided Dec. 7, 2005.

Reargument/Reconsideration Denied En Banc Jan. 31, 2006.

Amiel B. Caramanna, Jr., Pittsburgh, for petitioners.

Linda S. Judson, Pittsburgh, for Eichleay Corporation, respondent.

Mark Gordon and Gregory J. Fischer, Pittsburgh, for Minnotte Corporation, respondent.

John D. O'Brien, Pittsburgh, for Barletto Equipment Company, respondent.

Nicholas A. Cerimele, III, Pittsburgh, for Voith Hydro, Inc., respondent.

Travis W. Smith, Pittsburgh, for Zack Company, respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

A petition has been filed on behalf of Thomas Baptiste, deceased, and his widow Linda Baptiste (Petitioners) seeking review of the order of the Workers' Compensation Appeal Board (Board) that affirmed in part and reversed in part the order of Workers' Compensation Judge (WCJ) Eric Jones. The Board held that Baptiste and his widow had failed to prove which employer was the last employer responsible for Baptiste's exposure to an occupational hazard, and it granted the appeal of Eichleay Corporation from WCJ Jones' decision holding it responsible.[1]

The questions presented in this appeal are stated separately, although argued together. They are whether Baptiste met his burden to show that he sustained mixed dust pneumoconiosis as a result of his total and cumulative exposure to coal dust, welding fumes, asbestos, silica and other pollutants while working as a millwright for twenty-seven years for all of the named defendants; whether the Board misinterpreted Baptiste's correct burden of proof to show that he had contracted a disabling occupational disease; and whether the Board improperly substituted its own credibility determinations for those of the first WCJ.

I

At a February 1995 hearing before WCJ Robert Steiner, Baptiste testified that he worked for twenty-seven years as a millwright, working out of a union hall for multiple employers. As a millwright he erected motors, repaired gear boxes and cranes or anything that was mechanical, and he did a lot of climbing, heavy lifting and sledgehammer work. He welded and burned (on virtually every job in which he was involved) and used a plasma machine to cut stainless steel, which exposed him to fumes and to dust.[2] Also he was exposed at times to silica and asbestos, especially when making gaskets from a material that contained asbestos, and he worked in power plants, steel mills, chemical plants and oil refineries. He last worked August 24, 1993 for Minnotte at Midland Steel, working thirteen hours that night. The workers had to vacate the building because trouble with exhaust fans in the melt shop led to a buildup of gases. Baptiste was ill all night after that, and he had not worked as a millwright since.

Dr. Macy Levine, board-certified in internal medicine and allergy, examined Baptiste and reviewed x-rays. He diagnosed mixed dust pneumoconiosis and chronic bronchitis due to exposure to all the various dusts to which Baptiste was exposed during his work experience, including coal dust, asbestos and silica (the doctor later retracted the chronic bronchitis attribution if it was true that Baptiste had a significantly greater smoking history). He stated that the incidence of mixed dust pneumoconiosis and chronic bronchi-

---

1. Baptiste filed seven claim petitions in December 1994 against Minnotte Corporation, Eichleay, JWP Zack, Barletto Equipment Company, Dick Corporation, Songer Corporation and Voith Hydro, Inc. In September 1995 he filed additional workers' compensation occupational disease claim petitions, alleging that while working as a millwright he was exposed to coal dust, welding fumes, asbestos, silica and other pollutants and that he contracted lung cancer. After his death on November 25, 1995, Linda Baptiste filed eight fatal claim occupational disease claim petitions.

2. When asked if pretty much every job involved burning, Baptiste said: "I don't know of any, only one, and that was so many years ago that I didn't use a torch on a job and other than that, every job I was on was burning and welding." N.T. February 14, 1995, p. 19; R.R. 812.

tis is substantially greater in people exposed to all these materials than in the general population and that Baptiste's pneumoconiosis made his death from lung cancer occur sooner by compromising his ability to breathe.

Dr. James K. Lanz, board-certified in internal medicine, pulmonary medicine and critical care medicine, first saw Baptiste in May 1995, and after reviewing x-rays and performing other tests he diagnosed interstitial lung disease and a right upper lobe mass that proved to be carcinoma. He stated that but for the underlying lung disease he would have performed surgery. He noted that the incidence of mixed dust pneumoconiosis is substantially greater in Baptiste's occupation than in the general population and testified that he died from lung cancer and pneumoconiosis interstitial lung disease. Dr. Gregory J. Fino performed a records review and testified on behalf of Minnotte. He stated that welding fumes can cause radiographic abnormalities known as arc welders' pneumoconiosis but this causes no impairment or disability, that Baptiste had occupational silicosis and asbestosis and that he died as a result of lung cancer contributed to by smoking and asbestosis.

▇▇▇▇ WCJ Steiner in a lengthy decision circulated December 18, 1997, decided that Baptiste met the requirements of the omnibus occupational disease provision of Section 108(n) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* added by Section 1 of the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(n).[3] The WCJ noted that for diseases specifically enumerated under certain subsections of Section 108, where there are multiple employers, the employer responsible is that in whose employment the claimant was last exposed for a period of not less than one year in the 300 weeks before disability, or if none, the employer giving the longest period of employment in which there was exposure to the hazard. Section 301(c)(2) of the Act, 77 P.S. § 411(2).[4] This principle applies also if disability is found to result from two enumerated diseases. *Songer Inc. v. Workmen's Compensation Appeal Board (Lynn),* 149 Pa.Cmwlth.578, 613 A.2d 658 (1992). Liability for other diseases under Section 108, however, including under Section 108(n), is determined according to the "last injurious exposure" rule, which holds that when an employee is disabled or dies from a hazard attributable to multiple exposures during his or her employment, the employer liable will be the last employer responsible for exposure to the hazard. *Songer; Adams Steel Erection, Inc. v. Workmen's Compensation Appeal Board (Klavonick),* 117 Pa.Cmwlth.290, 543 A.2d 241 (1988).

---

3. Section 108(n) includes in the definition of "occupational disease" under the Act:

All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population. For the purposes of this clause ... the diseases silicosis, anthraco-silicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine, shall not be considered occupational diseases.

4. The specifically enumerated subsections are subsection (k) (silicosis), (*l*) (asbestosis and cancer from direct contact with asbestos), (m) (tuberculosis and some forms of hepatitis in certain health-related occupations), (*o*) (diseases of the heart and lungs for certain firefighters), (p) (byssinosis in occupations involving cotton) or (q) (coal workers' pneumoconiosis or black lung in occupations involving contact with or exposure to the dust of coal), 77 P.S. § 27.1(k), (*l*), (m), (*o*), (p) or (q).

WCJ Steiner credited the medical testimony of Drs. Levine and Lanz that Baptiste suffered from occupational mixed dust pneumoconiosis, which has a higher incidence in his occupation. The WCJ specifically rejected the testimony of Dr. Fino that exposure to welding fumes did not cause or contribute to Baptiste's pulmonary impairment, and he found that Baptiste was exposed throughout his twenty-seven years as a millwright to asbestos, silica, coal dust, welding fumes and other air pollutants. He concluded that the resulting mixed dust pneumoconiosis was distinct from any enumerated disease process; therefore, *Songer* was distinguishable and the last injurious exposure rule applied. The WCJ credited the testimony of Baptiste that he burned and welded on virtually all of his jobs, and he concluded that it made the responsible employer Minnotte in regard to the lifetime claim. Further, WCJ Steiner credited Drs. Levine and Lanz that Baptiste's lung disease contributed to his death, in regard to the fatal claim.

On the initial appeal to the Board by Minnotte (and also by Eichleay, which was deemed not to be aggrieved), the Board affirmed WCJ Steiner's decision. The Board thereafter granted reconsideration and in a second opinion affirmed the conclusion that Section 108(n) and the last injurious exposure rule applied; however, it reversed the imposition of liability on Minnotte assertedly on the basis of exposure to unidentified gases on August 24, 1993 because there was no evidence that those gases were harmful or contributed to the mixed dust pneumoconiosis. It remanded for a determination of which was the last employer responsible for an exposure to an occupational hazard causing his disease. On the first remand, WCJ Steiner relied on the existing record and reaffirmed his earlier decision. He relied upon testimony of Baptiste and also Claimant Ex. 1, a listing of Baptiste's work history with various employers from January 20, 1987 through August 24, 1993. He stated that Richard S. Galis, testifying for Minnotte, admitted that Baptiste also worked for Minnotte for two days in July 1993, which was reflected in the work history exhibit. He referred to the principle that a claimant need not present scientific evidence or expert testimony to establish exposure to a hazard; rather a WCJ may rely upon the testimony of a claimant or other witnesses. *See Witco–Kendall Co. v. Workmen's Compensation Appeal Board (Adams)*, 127 Pa.Cmwlth.509, 562 A.2d 397 (1989). Exposure to a hazard is a question of fact for the WCJ, and the claimant's burden is not overly demanding. *Id.*

Minnotte appealed again, arguing that no evidence was presented to establish that the dust and fumes to which Baptiste was exposed contributed to his mixed dust pneumoconiosis. In its second review of the merits in October 2001, the Board concluded that the record lacked substantial evidence to support the determination that Minnotte was the last employer responsible for Baptiste's exposure to a hazard on August 24, 1993. The Board remanded for findings on the critical issue of which was the last employer responsible for exposure to an occupational hazard. It stated that if Linda Baptiste were unable to establish that, she would have failed to prove all elements necessary to support an award.

WCJ Steiner indicated in the second remand decision that the Board misunderstood his previous decisions and that he did not apply a rebuttable presumption under Section 301(e) of the Act, 77 P.S. § 413; rather he treated the matter under Section 108(n). He again stated that he relied on Baptiste's testimony, work records and testimony of Galis to find that Baptiste worked for Minnotte for two days

in July and also in August, and he worked for no other employer in between. Even with the Board's determination that exposure to unidentified gases on the last day of work was not sufficient to establish Minnotte as the last employer, the evidence of Baptiste's performing duties as a millwright for Minnotte in July and August was sufficient. On Minnotte's appeal, the Board concluded that there was no substantial evidence of record to support the finding that Minnotte was the last employer responsible for exposure to an occupational hazard in July 1993. Further, Claimant Ex. 1 did not indicate when hazardous exposure may have occurred.[5] The Board reversed the WCJ and remanded for "factual findings with respect to Claimant's exposure to an occupational hazard before July 1993...." Board Opinion, August 23, 2002, p. 8.

The third remand was assigned to WCJ Eric Jones, who reviewed the evidence of record and interpreted the Board's order as requiring that he determine what employer, other than Minnotte, was responsible for the last hazardous exposure. The WCJ credited testimony of Charles Barletto, President of Barletto, that the job on which Baptiste worked between March and July of 1993 dismantling machines to be shipped to South America was at a very clean facility and that there were no contaminants in the air. He found that when Baptiste worked for Eichleay at the Midland Steel Facility from June 1992 through September 1992 he worked in a very dusty environment while welding and burning and that at the Kabuta Chemical Plant from January to June 1992 Baptiste was exposed to a dust hazard, but he stated that the record did not establish the specific type of dust. He made similar findings of exposure without establishing the specific type of dust in regard to Zack, and he found no evidence of exposure otherwise (despite Baptiste's testimony that he performed welding, burning and "lots of grinding" with Voith Hydro, for example).

WCJ Jones, echoing the Board's citation, determined that the record did not establish a specific exposure to a named hazard as required by *Ferraccio v. Workmen's Compensation Appeal Board (Intech Constr. Co., Inc.)*, 166 Pa.Cmwlth. 169, 646 A.2d 65 (1994), *aff'd*, 543 Pa. 163, 670 A.2d 127 (1995). He stated that the dusts identified as causing the mixed dust pneumoconiosis were silica, coal and asbestos, but the record did not establish exposure to those at Eichleay or Zack. He noted that "silicosis, anthracosilicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine" are expressly excluded from the coverage of Section 108(n), and he observed that there is no other provision for a mixed dust pneumoconiosis under that provision. He referred to the requirement under Section 301(d), 77 P.S. § 412, that for those three diseases plus asbestosis, there must be aggregate employment of two years in Pennsylvania in the ten years

---

5. At this time the Board ruled in favor of Minnotte's hearsay objection to the printout, which was made in the initial proceeding before the WCJ (but raised on the first appeal only by Eichleay, not by Minnotte). The Board cited *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976), and stated that the printout was not authenticated. Further, it was described as being not consistent with the testimony because the Board read it as indicating only one day's work for Minnotte in July. Minnotte failed to preserve its objection to the printout. In any event, specific periods of employment were the subject of testimony by witnesses for various employers. As is readily apparent from a review of the printout, where a single date may have an entry for hundreds of hours, it does not purport to list every day's work. The printout also shows that Baptiste worked for Minnotte on numerous occasions.

preceding disability in an occupation having the hazard. He stated that no exposure approached two years, and he would find that Baptiste failed to prove a hazard sufficient to establish an occupational disease. Because he felt constrained by the remand order, he identified Eichleay as the last hazard exposure employer.

■ In its fourth decision in December 2004, the Board approved WCJ Jones' conclusion that the record did not show that Baptiste was exposed to silica, coal dust or asbestos dust at Eichleay or at Zack. The Board stated that although it had ruled before that the WCJ was not to analyze this claim considering Section 301(d) of the Act, the fact remained that Baptiste did not establish a last injurious employer. It granted Eichleay's appeal and reversed the finding that it was liable, affirmed the decision to the extent that it determined Baptiste and Linda Baptiste failed to establish which was the last employer responsible for exposure to an occupational hazard and dismissed the appeals of Minnotte and Voith Hydro, Inc.[6]

II

■ On the present petition for review, Petitioners stress that WCJ Steiner accepted as credible Baptiste's testimony that his work as a millwright required him to weld and burn on virtually all of his jobs, exposing him to fumes and dust, and that Baptiste last worked as a millwright for Minnotte in July and August 1993. Baptiste's medical evidence established mixed dust pneumoconiosis as a result of his total and cumulative exposure to welding fumes, burning and galvanized steel, coal dust, asbestos, silica and smoke and oil fumes. WCJ Steiner Decision, December 18, 1997, p. 21, Finding of Fact 28. There is no requirement that a claimant prove exposure by scientific evidence. *Witco–Kendall Co.* A WCJ may rely on testimony of the claimant or other witnesses to prove the existence of exposure to a hazard. *Mauger & Co. v. Workmen's Compensation Appeal Board (Waltz)*, 143 Pa.Cmwlth.198, 598 A.2d 1035 (1991). Whether a hazard exists is a question of fact for the WCJ. *A.C. Moyer Co. v. Workmen's Compensation Appeal Board*, 67 Pa. Cmwlth. 50, 445 A.2d 1354 (1982).[7]

6. The Court's review of the Board's order is limited to determining whether there was a constitutional violation or an error of law, whether practices and procedures of the Board were followed and whether the necessary findings of fact are supported by substantial evidence in the record. 2 Pa.C.S. § 704; *Matticks v. Workers' Compensation Appeal Board (Thomas J. O'Hora Co., Inc.)*, 872 A.2d 196 (Pa.Cmwlth.2005). The WCJ as finder of fact has exclusive province over questions of credibility and weight of the evidence and may accept or reject the testimony of any witness, in whole or in part. *Newhouse v. Workers' Compensation Appeal Board (PJ Dick/Trumbull Corp.)*, 803 A.2d 828 (Pa. Cmwlth.2002).

7. Nothing in *Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Prods.)*, 580 Pa. 470, 861 A.2d 938 (2004), where the Supreme Court discussed the standard for admission of lay opinion testimony on technical matters in workers' compensation proceedings, is to the contrary. The majority held that a co-worker's testimony that the decedent was exposed to dark gray insulating material that he thought was asbestos but could not identify with certainty was not competent and sufficient to support a finding of continuous and longstanding exposure to asbestos. The court required firsthand knowledge and sufficient experience or specialized knowledge acquired by formal education or practical experience to make a lay witness qualified to offer a technical opinion of the presence of asbestos in the workplace. The Supreme Court expressly distinguished *Witco–Kendall*, where the employer conceded the presence of asbestos in the workplace until abatement, and the claimant testified as to exposure after that, even though he did not identify dust to which he was exposed as asbestos. In the present case Baptiste testi-

Petitioners argue that the Board improperly substituted its credibility determinations for those of WCJ Steiner. Although the Board first correctly stated the claimant's burden of proof and correctly affirmed WCJ Steiner's original order, it later changed the burden to require virtual scientific testimony regarding the composition of the materials to which Baptiste was exposed. Although the Board initially acknowledged that Baptiste became disabled from an occupational disease under Section 108(n), it later adopted the conclusion of WCJ Jones that no proof of any exposure had been established. It becomes apparent to the Court in its review that the Board has usurped the fact finding role of the WCJ and has applied an incorrect standard regarding proof of a hazard.

The Board and WCJ Jones both relied upon *Ferraccio* regarding proof of hazard. That case is an asbestosis only case, where the evidence was that the decedent was exposed to asbestos on only three occasions while supervising the renovation of a building. The Court noted that asbestosis is an enumerated disease under Section 301(d) of the Act, 77 P.S. § 412, which requires proof of exposure to the hazard for an aggregate of two years in the ten years preceding disability. It noted further that "exposure" refers to the period of actual exposure to the hazard, not to the overall period of employment, and it affirmed denial of benefits because the widow failed to meet the Section 301(d) threshold. A case that is much closer factually and legally to the present case is *Adams Steel Erection, Inc.* There the claimant worked as an iron worker in the welding industry for various employers over many years. He spent 90 percent of his time using an arc welder and 10 per-

cent using a cutting torch. He became partially disabled from mixed dust pneumoconiosis, resulting from a variety of exposures but primarily exposure from welding. The claimant successfully pursued his claim under Section 108(n), and the liable employer was established under the last injurious exposure rule rather than the period of longest exposure under Section 301(c)(2).

WCJ Jones acknowledged that Baptiste (with a diagnosis of "mixed dust pneumoconiosis") on at least some occasions worked in very dusty circumstances, but he found no proof of exposure because the precise nature of the dust was not established. Further, the WCJ essentially ignored the mixed dust pneumoconiosis diagnosis and relied upon the exclusion of silicosis, anthraco-silicosis and coal workers' pneumoconiosis resulting from employment in and around a mine from coverage of Section 108(n) and the aggregate two-year exposure requirement of Section 301(d) for these plus asbestosis to find that Linda Baptiste failed to prove a hazard sufficient to prove an occupational disease. This was plainly error under *Adams Steel Erection, Inc. See also Fruehauf Corp., Independent Metal Div. v. Workmen's Compensation Appeal Board*, 31 Pa. Cmwlth. 341, 376 A.2d 277 (1977) (holding that claim for disability due to anthracosilicosis and arc welders' pneumoconiosis from exposure to noxious dusts, gases and fumes while working first as coal miner and later as welder was properly pursued under Section 108(n)). The Board appeared to recognize the error in the WCJ's analysis but nevertheless affirmed the result; also it must have rejected WCJ Steiner's credibility determinations regarding Baptiste's testimony that he weld-

---

fied to his continuous and longstanding exposure to various hazards including welding fumes, burning steel and others, which his

doctors identified as the cause of his mixed dust pneumoconiosis.

ed and cut in all his work as a millwright and that he last worked as a millwright for Minnotte.

■ Minnotte continues to assert that gases from the faulty condition of the exhaust fan on Baptiste's last night of work were not shown to be a causative factor in his pneumoconiosis or his lung cancer, but as the discussion above indicates this point is irrelevant. Minnotte contends that neither of Baptiste's medical witnesses identified exposure to welding fumes in Minnotte's employ that could have caused his lung disease. This represents a complete misstatement of the claimant's burden. For purposes of determining the liable employer among multiple employers where the last injurious exposure rule applies, a claimant must show exposure to the hazard with the particular employer. *Songer*; *Adams Steel Erection, Inc.* The courts have never held that the claimant must offer medical or other proof that the exposure of that particular occasion made an identifiable contribution to the disability.

Finally, Minnotte relies upon WCJ Jones' finding, adopted by the Board, that Baptiste's testimony did not establish specific exposure to silica, coal, asbestos or welding fumes with any of the named employers. The Court's discussion above demonstrates that such a determination may not be upheld. The general rule is that whether a hazard exists is a question of fact for the WCJ to determine. *Gray v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*, 657 A.2d 77 (Pa.Cmwlth.1995) (holding that testimony of secretary at a vocational training school that she was exposed to odors and fumes of paint, varnish, thinner, gasoline and oil-type smells was sufficient to establish exposure to a hazard). The determinations of WCJ Steiner that Baptiste suffered exposures to hazards in the course of his employment resulting in mixed dust pneumoconiosis and that the last such exposure was with Minnotte were supported by substantial evidence in the record and should not have been disturbed by the Board. In view of this determination, the Court need not address the arguments of other respondent employers, which to a large extent echo those of Minnotte. The order of the Board is reversed, and the original order of WCJ Steiner is reinstated.

## ORDER

AND NOW, this 7th day of December, 2005, the order of the Workers' Compensation Appeal Board of December 7, 2004, is reversed. The decision of Workers' Compensation Judge Robert Steiner of December 18, 1997 is reinstated.