# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| City of Williamsport, | : |
| | : |
| Petitioner | : |
| | : |
| v. | : No. 620 C.D. 2015 |
| | : Argued: February 9, 2016 |
| Workers' Compensation Appeal | : |
| Board (Cole (Deceased)), | : |
| | : |
| Respondent | : |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                                  **FILED:  July 18, 2016**


The City of Williamsport (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision and order of a Workers' Compensation Judge (WCJ), which granted a fatal claim petition of Ursula Miele-Cole (Claimant) on behalf of her husband, Jeffrey Cole (Decedent) pursuant to Section 108(r) of the Workers' Compensation Act (Act),[1] relating to cancers suffered by firefighters.  Because we conclude that Claimant did not establish that Decedent had direct exposure to a known carcinogen classified as

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1, 2501–2708.  Section 108(r), 77 P.S. § 27.1(r), was added by the Act of July 7, 2011, P.L. 251, and this amendment took immediate effect.

a Group 1 carcinogen by the International Agency for Research on Cancer (IARC) as required by Section 301(f) of the Act,[2] we reverse the order of the Board.

On March 15, 2012, Claimant filed the claim petition, alleging that Decedent's death from gastric cancer in October 2011 was causally related to his employment with Employer as a firefighter from 1980 until the time of his death. Claimant based the fatal claim petition on two occupational disease provisions of the Act: Section 108(o), relating to diseases of the heart and lungs caused by over-exertion or exposure to heat, smoke, fumes or gases arising out of the duty of a firefighter, and Section 108(r). 77 P.S. §§ 27.1(o), (r). Employer filed an answer denying all material allegations and issued a Notice of Workers' Compensation Denial asserting that Decedent did not suffer a work-related injury.

In the proceedings before the WCJ, Claimant testified that she and Decedent began dating in 1992 and married in 2000. (May 24, 2012 Hearing Transcript (H.T.) at 10-11, 14, 34, Reproduced Record (R.R.) 10a-11a, 14a, 34a.) Claimant testified that during the period they were together, she saw Decedent approximately 15 times after a fire when he had not had the opportunity to shower at work following his shift and on those occasions he smelled "smoky" and appeared "[l]ike someone who came out of ashes." (*Id.* at 14, R.R. 14a.) Claimant stated that Decedent had been suffering from stomach discomfort for approximately three years when in June 2011 he developed deep vein thrombosis in his lower left leg and then stomach hemorrhaging that ultimately led to his hospitalization and cancer diagnosis in July 2011. (*Id.* at 15-17, 40, 42, R.R. 15a-17a, 40a, 42a.)

---

[2] 77 P.S. § 414, *added by* Act of July 7, 2011, P.L. 251.

Claimant presented the testimony of an expert witness, Jonathan L. Gelfand, M.D., who is board certified in internal medicine and pulmonary disease and whose clinic practice consists primarily of treatment of patients with pulmonary diseases, including lung cancer and mesothelioma. (Gelfand Dep. at 6-8, R.R. 59a-61a.) Dr. Gelfand opined that Decedent had exposure to a variety of carcinogens during his career as a firefighter, including asbestos, and that his work as a firefighter and these exposures were a substantial contributing factor to his death from gastric cancer. (*Id.* at 18-19, R.R. 71a-72a.) He testified that it was his belief that Decedent was exposed to asbestos because asbestos was a common building material until the 1980s which can become friable or fragile during fires or building collapse and firefighters who have fought fires for any considerable amount of time are generally exposed to asbestos. (*Id.* at 19-21, 26-27, R.R. 72a-74a, 79a-80a.)

Employer presented the testimony of its expert, David Prince, M.D., who is board certified in internal medicine, pulmonary medicine, critical care medicine and sleep medicine and who reviewed Decedent's medical records. (Prince Dep. at 7, 14, R.R. 117a, 124a.) Dr. Prince testified that Decedent had a history of high blood pressure, smoking, obesity and stomach upset that were substantial risk factors for gastric cancer. (*Id.* at 17-18, 26, R.R. 127a-128a, 136a.) Dr. Prince stated that it was his opinion that Decedent's development of gastric cancer was not related to firefighting. (*Id.* at 25, R.R. 135a.) Dr. Prince further testified that epidemiologic evidence does not support a proven risk of gastric cancer for firefighters and that asbestos exposure is not associated with a risk of gastric cancer, among firefighters or in any occupation. (*Id.* at 25, 27-29, R.R. 135a, 137a-139a.)

3

The WCJ granted the fatal claim petition under Section 108(r), concluding that Claimant had established that Decedent contracted gastric cancer as a result of direct exposure to smoke from municipal fires that contained Group 1 carcinogens as recognized by the IARC. (WCJ Decision Findings of Fact (F.F.) ¶¶65, 68, Conclusion of Law (C.L.) ¶13.) Employer appealed the WCJ's decision to the Board, which affirmed. Employer thereafter petitioned this Court for review of the Board's order.[3]

In Act 46 of 2011, the General Assembly enacted Sections 108(r) and 301(f), creating a new occupational disease provision to provide a new presumption of compensable disability for firefighters who suffer from cancer. Act of July 7, 2011, P.L. 251. Section 108(r) recognizes the occupational disease of "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer." 77 P.S. § 27.1(r). Section 301(f) provides, in relevant part, that:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer.

---

[3] This Court's review of an appeal from a determination by the Board is limited to determining whether an error of law was committed, whether the WCJ's necessary findings of fact are supported by substantial evidence and whether Board procedures or constitutional rights were violated. 2 Pa. C.S. § 704; *Repash v. Workers' Compensation Appeal Board (City of Philadelphia)*, 961 A.2d 227, 231 n.5 (Pa. Cmwlth. 2008).

4

77 P.S. § 414. Employer argues that Claimant did not present evidence sufficient to satisfy the first requirement of Section 301(f) that she establish Decedent had "direct exposure" to a carcinogen recognized as Group 1 by the IARC.[4] *Id.*

In determining that Claimant had shown that Decedent was exposed to a Group 1 carcinogen, the WCJ relied principally on the testimony of Dr. Gelfand and IARC Monograph Volume 98 related to carcinogenic risks associated with the occupations of firefighting, painting and shiftwork, which Dr. Gelfand referenced in his deposition and which was admitted into evidence. (Claimant Ex. 15, IARC Monograph Vol. 98: Painting, Firefighting and Shiftwork, R.R. 175a-185a.) Dr. Gelfand testified that it was his opinion that

> [Decedent] had exposure to a variety of carcinogens including and not limited to asbestos. He did die of metastatic stomach cancer. In my opinion, to a reasonable degree of medical certainty, [Decedent's] career as a firefighter for over 30 years and the exposures he experienced were a substantial contributing factor to his death from stomach cancer as a result of the previously noted exposures. Those exposures to recognized carcinogens were a substantial contributing factor to his stomach cancer and to his death.

(Gelfand Dep. at 19, R.R. 72a.)

Dr. Gelfand explained that it was his conclusion that Decedent had been exposed to asbestos because

> [a]sbestos was a commonly-used building material for decades around the world and in the United States and in Pennsylvania. It was used as insulation predominantly, but it was also in ceiling tiles, floor tiles, a variety of other building materials. In the – it was also used in the construction of many fire stations

---

[4] Employer did not challenge that Claimant satisfied the other two requirements in Section 301(f) that Decedent served four or more years of continuous firefighting duties and passed a physical examination prior to asserting this claim that did not reveal any evidence of cancer.

5

around the state and was present there until the 1980s roughly when there was asbestos abatement, or when asbestos abatement programs began.

But it was common for asbestos in buildings to become friable or fragile and to release dust. But separate from that, as part of the firefighting activity, it's common to engage in some demolition; pulling ceilings and walls, or the buildings themselves were and become unstable and may at times collapse. At such times, asbestos is released into the air and can be inhaled by anyone in that particular vicinity.

(*Id.* at 20-21, R.R. 73a-74a.) Dr. Gelfand noted that asbestos is classified as a Group 1 carcinogen in the IARC monograph with cancer sites in humans listed as the "lung, mesothelioma, larynx, gastrointestinal tract." (*Id.* at 19-20, R.R. 72a-73a; Claimant Ex. 15, IARC Monograph at 401, R.R. 183a.) Dr. Gelfand stated that Decedent would also likely have been exposed to other carcinogens in his employment as a firefighter, but he could not specifically name any additional carcinogens. (Gelfand Dep. at 27, 34, R.R. 80a, 87a.)

Dr. Gelfand testified that he based his opinion that Decedent was exposed to asbestos and other carcinogens on Claimant's testimony, his review of Decedent's medical records, discussions with patients who are current or former firefighters regarding their work, the IARC monograph and other medical literature regarding the occupational exposure of firefighters to carcinogens. (*Id.* at 12-16, 19-22, R.R. 65a-69a, 72a-75a.) However, Dr. Gelfand admitted that he did not examine Decedent, speak with Claimant, Decedent's physicians or any individuals who worked at Employer's fire department; furthermore, Dr. Gelfand testified that he did not review any records related to Decedent's experience as a firefighter, such as incident reports related to fires he fought or injuries sustained on the job. (*Id.* at 12, 32-33, R.R. 65a, 85a-86a.) Dr. Gelfand was also asked at the outset of

6

his deposition to assume for the purposes of rendering his opinion that Claimant had testified that Decedent was "exposed to heat, smoke, fumes, gasses, asbestos and other materials" during his 31 year firefighting career[5]; similarly, in Dr. Gelfand's expert report he noted that Decedent "was exposed to heat, smoke, fumes, gases and probable exposure to asbestos, and it has been reported that he has been exposed to a variety of carcinogens." (*Id.* at 18, R.R. 71a; Gelfand Dep. Ex. 2, Expert Report at 2, R.R. 108a.) Dr. Gelfand conceded on cross-examination that he did not in fact review Claimant's testimony personally and that the information that Decedent was exposed to heat, smoke, fumes, gases, asbestos and other carcinogens did not appear in Decedent's medical records but instead only in correspondence from Claimant's counsel. (Gelfand Dep. at 25, 36, R.R. 78a, 89a.)

In finding that Claimant had established that Decedent's gastric cancer was causally related to his workplace exposure to Group 1 carcinogen, the WCJ credited the testimony of Claimant generally, specifically noting Claimant's testimony that Decedent had been exposed to smoke while fighting fires with Employer. (WCJ Decision, F.F. ¶¶62-63, C.L. ¶9.) The WCJ also credited the testimony of Dr. Gelfand and found the testimony of Dr. Prince to be not credible or persuasive, specifically rejecting Dr. Prince's assumptions regarding Decedent's smoking history and diet as lacking a basis in the record and rejecting Dr. Prince's conclusion that gastric cancer was not a special hazard for firefighters as contrary to the IARC data and the presumption established by the General Assembly. (*Id.* F.F. ¶¶66-67, C.L. ¶¶9, 11.) The WCJ also found credible the IARC monograph cited by Dr. Gelfand and took notice of the agents classified as carcinogenic to

---

[5] Employer objected at Dr. Gelfand's deposition to this characterization of Claimant's testimony. (Gelfand Dep. at 18, R.R. 74a.)

humans; the WCJ specifically cited the conclusions in the monograph that various substances are released during municipal fires, including asbestos, that asbestos is a Group 1 carcinogen, and that the gastrointestinal tract is listed as a cancer site for asbestos. (*Id.* F.F. ¶¶34-35, 64, C.L. ¶¶9, 12; Claimant Ex. 15, IARC Monograph at 401, R.R. 183a.) The WCJ also noted that radioactivity (gamma activity) and radionuclides (alpha and beta particle-emitting) were also listed as known Group 1 carcinogens for all types of cancers. (WCJ Decision, F.F. ¶35; Claimant Ex. 15, IARC Monograph at 402, R.R. 184a.)

The Board affirmed the grant of the claim petition, concluding that Claimant's lay testimony was sufficient to establish exposure to smoke and that Claimant was not required to show consistent exposure to a Group 1 carcinogen but only direct exposure under Section 108(r). (Board Op. at 8-10.) The Board further concluded that Dr. Gelfand properly relied on his knowledge of the firefighting occupation and Claimant's testimony regarding Decedent's exposure to smoke and that the WCJ did not err by considering the IARC monograph as it related to Dr. Gelfand's testimony. (*Id.* at 10-11.)

After a thorough review of the record in this matter, we conclude that the record is devoid of competent evidence that Decedent had any direct exposure to a known Group 1 carcinogen as required by Section 301(f) of the Act. The sole evidence before the WCJ regarding Decedent's fire department exposure was Claimant's testimony that Decedent came home from fires on more than 15 occasions smelling of smoke and with an ashy appearance. While such testimony would be sufficient to show that Decedent was exposed to smoke and ash while working for Employer, by itself it was insufficient to show exposure to asbestos or any other specific Group 1 carcinogens within the smoke. Claimant did not admit

8

into evidence any Employer fire department logs, incident reports or building inspection records relating to fires Decedent fought.[6] Nor did Claimant attempt to introduce the testimony of any fire department personnel or any other individuals familiar with the construction of buildings in Williamsport upon which the WCJ could presume carcinogens in the fires extinguished by Decedent.

While Dr. Gelfand did testify that Decedent was exposed to Group 1 carcinogens, his testimony clearly lacks a proper foundation upon which that conclusion could be based. Dr. Gelfand did not meet with or examine Decedent, speak with Claimant, review Decedent's medical or employment files or speak with anyone at Employer's fire department regarding the type of fires that were fought and Decedent's role in fighting those fires. Indeed, the only piece of information that Dr. Gelfand had regarding Decedent's work history – that he was exposed to heat, smoke, fumes, gases, asbestos and other carcinogens – was an unfounded assumption with no basis in the record. Dr. Gelfand admitted that his testimony was based solely on his general knowledge of the firefighting profession and the general exposures of firefighters to carcinogens and was not based on Decedent's work history or the types of fires fought by Employer's fire department during his employment.[7]

---

[6] Claimant attempted to introduce into evidence a July 2009 incident report and medical records related to this incident at the May 24, 2012 hearing in this matter, however the WCJ declined to admit the report without testimony or a stipulation that the documents were kept in the ordinary course of business. (H.T. at 23-27, R.R. 23a-27a.) It does not appear that Claimant sought to reintroduce this evidence at a later date.

[7] Dr. Gelfand testified on cross-examination by Employer's counsel:

Q. It's your testimony that you believe just because he was a firefighter that he had to have been exposed to asbestos over those 30 years?

A. Yes.

...

Furthermore, the introduction of the IARC monograph into the evidence could not remedy the deficiency in Claimant's case. The WCJ relied on the IARC monograph to show that asbestos, along with radioactive particles, are Group 1 carcinogens that are found in municipal fires with cancer sites including the gastrointestinal tract. However, the monograph provides only that these carcinogens "have been detected in fires" and does not detail whether they are present in all, some or most fires or whether they are present in municipal fires or wildfires. (Claimant Ex. 15, IARC Monograph at 400, R.R. 182a.) Claimant could not satisfy the requirement of Section 301(f) that she establish direct exposure to a carcinogen recognized as Group 1 by the IARC simply by referencing the IARC monograph itself.

In holding that the evidence presented did not establish direct exposure to Group 1 carcinogens, we recognize that the question of whether a worker has been exposed to hazardous material in the workplace for the purpose of Section 108 of the Act is a question of fact for the WCJ and the claimant may rely on lay testimony, rather than that of an expert, to show the existence of, and exposure to, a hazard. *Baptiste v. Workers' Compensation Appeal Board (Eichleay Corp.)*, 889 A.2d 641, 645, 647 (Pa. Cmwlth. 2005); *Mauger and Co. v. Workmen's Compensation Appeal Board (Waltz)*, 598 A.2d 1035, 1037 (Pa.

---

Q. Is it your opinion, Doctor, that any firefighter that gets gastric cancer gets that solely because of their occupation?

A. There may be other contributing factors. But if a firefighter has been actively engaged in those sorts of activities for any length of time, then, it's as a general rule very likely that it will – if a firefighter then develops gastric cancer, that that exposure would have contributed to it. That's a very general comment about all firefighters.

(Gelfand Dep. at 26-27, R.R. 79a-80a.)

Cmwlth. 1991); *Witco–Kendall Co. v. Workmen's Compensation Appeal Board (Adams),* 562 A.2d 397, 400 (Pa. Cmwlth. 1989).  As this Court has recognized, "the claimant's burden of proof [for exposure to a hazardous material] is not overly demanding." *Witco–Kendall Co.,* 562 A.2d at 400; *see also Baptiste*, 889 A.2d at 645.

Nevertheless, the testimony of exposure to a workplace hazard must be competent and a WCJ must ensure that the evidence presented complies with the rules of evidence related to lay and expert testimony.  *Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products)*, 861 A.2d 938, 944, 947 (Pa. 2004).  To be competent, an expert must base his testimony on facts warranted by the record or reasonable inferences drawn therefrom.  Pa. R.E. 703; *Collins v. Hand*, 246 A.2d 398, 404 (Pa. 1968); *Mauger*, 598 A.2d at 1038. Though Dr. Gelfand professed to have an awareness of the working conditions of municipal firefighters, Dr. Gelfand had no knowledge of the facts of Decedent's career or the fires fought in the City of Williamsport.  Consequently, the WCJ erred in relying on such testimony to show exposure to a workplace hazard that would support an occupational disease presumption under the Act.

Accordingly, we conclude that Claimant did not present substantial, competent evidence that Decedent had "direct exposure" to a known IARC Group 1 carcinogen as required by Section 301(f) and therefore the WCJ improperly

11

granted the claim petition under Section 108(r) of the Act. Based on this ruling, we need not address the remaining arguments advanced by Employer.[8]

_____

JAMES GARDNER COLINS, Senior Judge

---

[8] Claimant argues that this Court should affirm the grant of the claim petition pursuant to Section 108(o), the occupational disease provision for diseases of the heart and lungs caused by over-exertion or exposure to heat, smoke, fumes or gases arising out of the duty of a firefighter, because Decedent's gastric cancer had spread to his lungs. Though Claimant invoked Section 108(o) in her claim petition, the WCJ did not state in his decision whether Claimant had proved a claim pursuant to that subsection. Dr. Gelfand did not address any heart or lung conditions in his expert report and explicitly denied a finding that Decedent's gastric cancer had spread to his lungs. (Gelfand Dep. at 26, R.R. 79a) ("Q. [The cancer] spread to the lungs? A. I don't recall any evidence – it doesn't usually – stomach cancer doesn't usually spread to the lungs, and I don't recall that it did in this case."). Employer's expert, Dr. Prince, testified that, while Decedent suffered from blood clots in his lung and x-ray reports showed fluid in the lungs consistent with the spread of cancer to his lungs, evidence that the cancer had in fact spread to his lungs was inconclusive in the absence of an autopsy and, in any event, the blood clots and possible spread of cancer to the lungs were precipitated by the gastric cancer; Dr. Prince further testified he did not diagnose Decedent with heart or lung problems associated with his firefighting activities. (Prince Dep. at 19-22, 24-27, R.R. 129a-132a, 134a-137a.) Thus, there is insufficient basis in the record for an occupational disease award pursuant to Section 108(o).

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Williamsport,                     :
                                          :
                    Petitioner            :
                                          :
            v.                            : No. 620 C.D. 2015
                                          :
Workers' Compensation Appeal              :
Board (Cole (Deceased)),                  :
                                          :
                    Respondent            :

# **O R D E R**

AND NOW, this 18th day of July, 2016, it is hereby ORDERED that the order of the Workers' Compensation Appeal Board in the above-captioned matter is REVERSED.

_____
JAMES GARDNER COLINS, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Williamsport,                    :
                    Petitioner           :
                                         :  No. 620 C.D. 2015
           v.                            :
                                         :  Argued: February 9, 2016
Workers' Compensation Appeal             :
Board (Cole (Deceased)),                 :
                    Respondent           :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


*OPINION NOT REPORTED*

CONCURRING AND DISSENTING
OPINION BY JUDGE McCULLOUGH                    FILED: July 18, 2016


              I agree with the Majority to the extent that it concludes that, based upon a review of the record in this matter, it is not clear that Ursula Miele-Cole (Claimant) met her burden under section 301(f) of the Workers' Compensation Act (Act)[1] to establish that her late husband, Jeffrey Cole (Decedent), had direct exposure to a known carcinogen classified as a Group 1 carcinogen by the International Agency for Research on Cancer (IARC).  However, I respectfully dissent because I believe that the matter should be remanded to the Workers' Compensation Judge (WCJ) to make additional factual findings with respect to this

_____

[1] Act of June 2, 1915, P.L. 736, added by the Act of July 7, 2011, P.L. 251, *as amended*, 77 P.S. §414.

burden as it relates to section 108(r) of the Act,[2] as well as the presumption of causation under section 301(e) of the Act, 77 P.S. §413.

As the Majority notes, our General Assembly enacted new occupational disease provisions with its passage of Act 46 in 2011, including sections 108(r) and 301(f). Section 108(r) specifically recognizes as an occupational disease "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer." 77 P.S. §27.1(r). Section 301(f) provides, in relevant part, that:

> Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, **who can establish direct exposure to a carcinogen** referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer.

77 P.S. §414 (emphasis added).

Additionally, section 301(e) of the Act states that "[i]f it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive." 77 P.S. §413. Generally, once a claimant establishes that the presumption applies, the burden shifts to the employer to rebut the presumption with substantial, competent

_____

[2] Section 108(r) was added by the Act of July 7, 2011, P.L. 251, 77 P.S. §27.1(r).

PAM - 2

evidence. *City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011).

However, it is not clear from the WCJ's decision whether he applied the presumption in this case. While the WCJ references the presumption in his conclusions of law, as well as the shifting burden of proof once the threshold requirements applicable to the presumption are met, he never states whether he applied the same in rendering his decision. Such a determination is critical to this case given the shifting burden of proof and the WCJ's rejection of Employer's expert medical testimony. Hence, I believe that additional findings are necessary to the resolution of this matter.

Moreover, in her fatal claim petition, Claimant alleged that Decedent's death from gastric cancer was causally related to his employment as a firefighter for the City of Williamsport (Employer). The WCJ agreed and granted Claimant's fatal claim petition, specifically crediting the following: Claimant's testimony that Decedent was exposed to smoke (Finding of Fact No. 62); the IARC monograph identifying which Group I carcinogens are components of smoke from municipal fires and which carcinogens have been causally linked to gastric cancer (Finding of Fact No. 64); and the testimony of Claimant's medical expert, Jonathan L. Gelfand, M.D., that Decedent suffered gastric cancer from exposure to smoke while fighting fires (Finding of Fact No. 66).

The WCJ relied on this credited testimony and evidence to conclude that Decedent "died from an occupational disease due to direct exposure to Group I carcinogens while in the course and scope of his employment as an active firefighter with . . . [Employer], for more than four years." (Conclusion of Law No. 13.) However, a review of Dr. Gelfand's testimony reveals that his opinions

were primarily based on Claimant's exposure to asbestos while fighting fires, which the IARC does identify as a Group I carcinogen. The WCJ recognizes as much in his summary of Dr. Gelfand's testimony. Yet, in his critical findings of fact and conclusions of law, the WCJ merely references Claimant's exposure to smoke and the carcinogens contained therein, with no specific mention of asbestos, as the cause of his gastric cancer.

The Majority reverses the decision of the Workers' Compensation Appeal Board (Board), which affirmed the WCJ's decision, concluding that "the record is devoid of competent evidence that Decedent had any direct exposure to a known Group I carcinogen as required by Section 301(f) of the Act." (Slip op. at 8.) The Majority emphasizes a lack of evidence in the record establishing Decedent's direct exposure to asbestos or any other specific Group I carcinogen. However, in light of Dr. Gelfand's testimony and the IARC's recognition of asbestos as a Group I carcinogen, I believe that additional findings are necessary to clarify the precise nature of Decedent's exposure and to determine whether Claimant presented sufficient evidence establishing that Decedent suffered from an occupational disease under section 108(r) of the Act and met her burden of proof under section 301(f) of the Act.

For these reasons, I would vacate the Board's order and remand the matter to the Board, with specific instructions to remand to the WCJ, for further findings as described above.

_____
PATRICIA A. McCULLOUGH, Judge