# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David W. Schmidt, : 
          Petitioner : 
   : 
      v. : No. 1887 C.D. 2016
   : Submitted: August 4, 2017
Workers' Compensation Appeal : 
Board (City of Allentown), : 
         Respondent : 


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  October 23, 2017**

Petitioner David W. Schmidt (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated November 8, 2016. The Board affirmed the decision and order of a Workers' Compensation Judge (WCJ), denying and dismissing Claimant's claim petition. For the reasons that follow, we affirm.

Claimant was employed as a full-time firefighter for the City of Allentown Fire Department (Employer) from August 28, 1978, through his last day of active duty work on October 12, 2009. Prior to his last day of employment, Claimant was diagnosed with coronary atherosclerosis, and he underwent open-heart surgery on October 22, 2009. Claimant did not return to work after his surgery, ultimately retiring on May 1, 2010.

On June 28, 2012, Claimant filed a claim petition, alleging a compensable injury in the form of coronary atherosclerosis that rendered him totally disabled beginning October 14, 2009. A WCJ conducted a hearing, during which Claimant testified that his job duties were that of an average firefighter, and he was able to perform them at adequate levels up until October 2009. (Reproduced Record (R.R.) at 11.) Claimant testified that in the time period leading up to his last day of employment, he began to experience shortness of breath and chest discomfort. (*Id.* at 12.) This prompted Claimant to seek a medical evaluation with his family doctor, ultimately leading to his surgery and subsequent retirement. (*Id.*) Claimant testified that he was routinely exposed to smoke throughout his career and that, although he utilized a breathing apparatus while exposed to fires, he would not use a breathing apparatus all the time. (*Id.* at 17.) Claimant further testified that he was also exposed to diesel smoke in the firehouse from the fire engines throughout his working career. (*Id.* at 19-20.)

In support of Claimant's claim petition, Claimant presented the deposition testimony of Nicholas DePace, M.D. (*Id.* at 48.) Dr. DePace testified that Claimant's fire service exposure was a significant causative factor of his coronary artery disease, albeit not the sole cause. (*Id.* at 53-54.) Dr. DePace opined that Claimant would not have had to undergo surgery at the age of 59 if not for his fire-service exposures over his career. (*Id.* at 54.) Dr. DePace further opined that Claimant was disabled from firefighting as a result of his surgery. (*Id.*)

In opposition to the claim petition, Employer presented the deposition testimony of Joseph A. Gascho, M.D. (*Id.* at 108.) Dr. Gascho testified that the need for Claimant's surgery was related to premature coronary artery disease primarily caused by three classic risk factors—high blood pressure, high cholesterol,

2

and diabetes.[1]  (*Id.* at 123.)  Dr. Gascho acknowledged Dr. DePace's assertion that Claimant's coronary artery disease was caused by Claimant's job as a firefighter. (*Id.*)  He opined, however, that although particulate matter from smoke exposure can be a contributing factor, it is "not nearly as important" a factor as the other risk factors that Claimant had.  (*Id.* at 123-24.)  Dr. Gascho also opined that Claimant had recovered enough to return to work as a firefighter with Employer.  (*Id.* at 129-30.)

In a decision circulated on November 7, 2013, the WCJ determined that the development of Claimant's injury and resultant surgery were not due to his duties as a firefighter, thus denying and dismissing the claim petition.  Thereafter, Claimant filed a timely appeal, alleging the WCJ failed to apply the statutory causation presumption set forth in Section 301 of the Workers' Compensation Act (Act).[2]  The Board, by opinion and order dated January 29, 2015, agreed that the WCJ erred by not applying the statutory presumption, vacated the WCJ's decision, and remanded the matter to the WCJ for the presumption to be applied.

By decision and order dated January 29, 2016, the WCJ applied the statutory presumption and again denied Claimant's petition.  The WCJ noted that the presumption under Section 301 of the Act is not conclusive, and the WCJ concluded that the medical evidence presented by Employer successfully rebutted

---

[1] Dr. Gascho testified that there are generally five risk factors that are considered to be "classic risk factors" for coronary artery disease:  (1) high cholesterol; (2) diabetes; (3) hypertension; (4) family history; and (5) smoking cigarettes.  (R.R. at 119.)

[2] Act of June 2, 1915, P.L. 736, added by the Act of October 17, 1972, P.L. 930, 77 P.S. § 413.  Section 301 of the Act provides:

> If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

that presumption. The WCJ accepted as credible Dr. Gascho's testimony that Claimant's coronary heart disease was primarily the product of his high cholesterol, hypertension, and diabetes. The WCJ rejected Dr. DePace's testimony as not credible, specifically his opinion that Claimant's firefighting duties constituted a substantial, contributing factor to the development of coronary heart disease. Claimant then filed a timely appeal to the Board, challenging the credibility determinations of the WCJ.

By opinion dated November 8, 2016, the Board affirmed the WCJ's denial and dismissal of Claimant's claim petition. The Board agreed with the WCJ that Employer had successfully rebutted the presumption under Section 301 of the Act. Claimant then petitioned this Court for review.

On appeal,[3] Claimant argues that the WCJ and the Board erred in concluding that Employer presented substantial competent evidence to successfully rebut the presumption of causation under Section 301 of the Act. More specifically, Claimant argues that the testimony of Dr. Gascho, Employer's medical expert, was not tantamount to competent evidence from which the WCJ could conclude that Employer successfully rebutted the presumption.

Claimant is seeking compensation for his coronary atherosclerosis pursuant to Section 108(o) of the Act.[4] A claimant proceeding under Section 108(o)

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] Act of June 2, 1915, P.L. 736, added by the Act of October 17, 1972, P.L. 930, *as amended*, 77 P.S. § 27.1. Section 108(o) of the Act defines the term "occupational disease" to include:

4

must first establish that he is suffering from and disabled by a particular occupational disease of the heart or lungs. *Harrigan v. Workmen's Comp. Appeal Bd.*, 397 A.2d 490, 492 (Pa. Cmwlth. 1979). Once a claimant has established that he has contracted an occupational disease, there is a presumption that the disease was caused by his employment. *Dillon v. Workers' Comp. Appeal Bd. (City of Phila.)*, 853 A.2d 413, 418 (Pa. Cmwlth. 2004), *appeal denied*, 871 A.2d 194 (Pa. 2005). That presumption is rebuttable by substantial, competent evidence. *Id.* An employer can successfully rebut the presumption by introducing unequivocal, medical evidence that, although a claimant's exposure to the hazards of firefighting may be a cause of the heart disease, other more significant causal factors are attributable to the heart disease. *Id.* at 419. The determination as to whether the testimony of a medical witness is competent is a question of law and is fully reviewable by this Court. *Buchanan v. Workmen's Comp. Appeal Bd. (City of Phila.)*, 659 A.2d 54, 56 (Pa. Cmwlth.), *appeal denied*, 668 A.2d 1137 (Pa. 1995). Such review must encompass the witness' entire testimony and not merely isolated statements. *Id.*

Claimant first argues that competent medical testimony did not exist to rebut the presumption of causation because Dr. Gascho misunderstood Claimant's fire service. Specifically, Claimant alleges that "Dr. Gascho's belief that [Claimant] was *always* protected from smoke, particulate, diesel, and soot as of the end of the [1980's] prevents his opinion from providing the competent evidence necessary to support the WCJ's opinions that [Employer] rebutted the presumption." (Pet'r Br. at 18-19 (emphasis in original).) Claimant contends that Dr. Gascho's medical

Diseases in the heart or lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger by exposure to heat, smoke, fumes, or gasses, arising directly out of the employment of any such firemen.

5

opinion is reliant on possibilities, as there is no evidence that indicates that Claimant always wore his breathing apparatus. Accordingly, Claimant argues that this opinion falls short of being competent evidence to rebut the presumption of causation. *See City of Phila. v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011) (*Kriebel*). We disagree.

Here, Dr. Gascho never testified that Claimant "always" used his breathing apparatus after it became standard protocol in the late 1980's, merely that Claimant used the breathing apparatus much more frequently. On the issue of Claimant's use of a breathing apparatus, Dr. Gascho testified:

> Q:    For exposure to smoke or particulate matter to be a factor, does there need to be a certain extent of exposure?
>
> A:    I'm sure there does. I mean, this is one of those gray areas now. It's very difficult to come up with exactly how much – how many minutes or hours or something else – I'm sure there's some gradation there – but of someone's firefighting exposure.
>
> Now, I think a significant issue in this situation, it appears that this gentleman, [the Claimant], didn't use a [breathing apparatus] very much until the eighties. Then from the eighties on, he used the [breathing apparatus] quite – it seems like pretty significantly religiously after that. Religious is not a good word here. It seems like he used it much more often from the eighties on. So that would suggest that his exposure was significantly less after that period of time.

(R.R. at 124.) Dr. Gascho did not fail to understand the nature of Claimant's firefighting duties with respect to Claimant's usage of a breathing apparatus. Instead, he explained that Claimant's consistent use of a breathing apparatus after the 1980s (as required by the standard operating procedures for firefighters), would

6

result in a decreased likelihood that Claimant's coronary artery disease was a result of his firefighting duties. Dr. Gascho expounded on this logic during his testimony:

> A: The whole point of [wearing a breathing apparatus] is to try to decrease the amount of exposure to the smoke. And when you have official guidelines and policies that say this is what you need to wear when you go to fight fires, and you start to wear that kind of thing and if it's not going to be – certainly I think that my opinion would be that you're going to *significantly decrease the amount of exposure* and therefore you're going to decrease the chance of this being a factor in causation for coronary artery disease.

(*Id.* at 126-27 (emphasis added).)

To be competent, an expert must base his testimony on facts warranted by the record or reasonable inferences drawn therefrom. *City of Williamsport v. Workers' Comp. Appeal Bd. (Cole(Deceased))*, 145 A.3d 806, 813 (Pa. Cmwlth. 2016), *appeal denied*, ___ A.3d ___ (Pa., No. 570 MAL 2016, December 21, 2016). Through Claimant's own testimony, wearing a breathing apparatus became required in the late 1980s, after which time Claimant agreed that it had become "routine" to wear them. (R.R. at 18.) Based upon this information, Dr. Gascho opined that Claimant would significantly decrease his exposure to airborne inhalants. Claimant's own medical expert, Dr. DePace, does not refute this conclusion, as he stated that although a breathing apparatus would not completely eliminate the risk posed by airborne inhalants, it would serve to diminish it. (*Id.* at 58.) Accordingly, we conclude that the WCJ did not err as a matter of law by failing to conclude Dr. Gascho's testimony was incompetent insofar as his understanding of Claimant's duties as a firefighter and Claimant's use of a breathing apparatus.

Next, Claimant challenges the competence of Dr. Gascho's testimony by averring that Dr. Gascho did not provide an opinion as to the cause of Claimant's disease within a reasonable degree of medical certainty. (Pet'r Br. at 19.) We disagree. During his deposition, Dr. Gascho testified as follows:

> Q: Based on all of the information that you were able to glean from the records, do you have an opinion within a reasonable degree of medical certainty as to the cause for Mr. Schmidt's coronary artery disease?
>
> A: Yes. I think that we would consider this to be premature coronary artery disease. He had it in his 50s and certainly has the three classic risk factors of high blood pressure, high cholesterol and diabetes, which are certainly the most important factors, significant factors, in setting him up to develop the cause of his coronary disease which then resulted in him needing the operation.

(R.R. at 122-23.) Dr. Gascho's medical opinion with respect to the cause of Claimant's coronary artery disease is the same opinion as the Claimant's own treating physician, Shehzad Malik, M.D. (R.R. at 155-56.) During Dr. Gascho's deposition, Employer introduced evidence in the form of a written statement from Dr. Malik concerning his treatment of Claimant. (*Id.* at 21.) In the document, Dr. Malik opines that the causation of Claimant's coronary artery disease is more likely to be attributable to Claimant's own personal risk factors than Claimant's history as a firefighter. (*Id.* at 156.)

In his brief, Claimant argues that the instant case is analogous to *Jeannette District Memorial Hospital v. Workmen's Compensation Appeal Board (Mesich)*, 668 A.2d 249 (Pa. Cmwlth. 1995) (*Mesich*), *appeal denied*, 677 A.2d 841 (Pa. 1996). In *Mesich*, this Court determined that an employer did not successfully rebut the presumption of causation when the employer was unable to provide

8

alternative possibilities for the cause of the claimant's disease. This Court summarized as follows:

> [The e]mployer's evidence was insufficient to rebut the presumption that [the c]laimant's disease was work-related. [The e]mployer presented the testimony of Dr. Michael Malinger and Dr. Wayne Peternel. Dr. Malinger testified that he could not establish within a reasonable degree of medical certainty what had caused [the c]laimant's hepatitis. Dr. Peternel also testified that he was unable to determine the cause of [the c]laimant's hepatitis. Therefore, [the e]mployer did not produce substantial evidence rebutting the presumption that [the c]laimant had acquired hepatitis within the course of her employment.

*Mesich*, 668 A.2d at 252 (internal citations omitted).

Claimant's analogy of *Mesich*, however, is not in accord with the record in this case. Not only did Dr. Gascho testify that Claimant's coronary artery disease was attributable to the other significant risk factors previously listed, but he then went on to describe his analysis of those risk factors and their importance in his analysis. (R.R. at 119-28.) The WCJ found this testimony to be credible, and this Court will not upset those credibility determinations, as they are the sole province of the WCJ. *Vols v. Workmen's Comp. Appeal Bd. (Alperin, Inc.)*, 637 A.2d 711, 714 (Pa. Cmwlth. 1994).

Last, Claimant argues that Dr. Gascho's "admission that particulate matter from smoke can be a contributing factor to the development and progression of coronary artery disease" is further evidence that his testimony is not competent to support the WCJ's decision. (Pet'r Br. at 20.) Specifically, Claimant points out that Dr. Gascho agreed with Dr. DePace's assertion that each of the Claimant's risk factors (diabetes, high cholesterol, and hypertension), in conjunction with Claimant's long-term exposure to particulate matter in smoke or diesel fuel

9

emissions were additive, in that each increased the risk for coronary heart disease. This admission, Claimant argues, serves to show that Dr. Gascho improperly disregarded the additive impact of Claimant's service as a firefighter, rendering his testimony incompetent as a matter of law.

While Dr. Gascho testified that Claimant's long-term exposure to particulate matter would be additive to Claimant's risk of coronary heart disease, Dr. Gascho also mentioned that Claimant's risk due to this exposure was "minor compared to the documented [risk factors]" present within Claimant. (R.R. at 148.) In other words, although Dr. Gascho acknowledged the risks related to Claimant's service as a firefighter, he offered extensive testimony as to how Claimant's other risk factors were more causally related to Claimant's coronary heart disease.

Claimant essentially asks this Court to reverse the credibility determinations of the WCJ as they pertain to Dr. Gascho and Dr. DePace. In assessing the credibility of Dr. Gascho and Dr. DePace, the WCJ found the following:

> The testimony and opinions of Dr. Gascho served as a thorough refutation of the opinions and testimony of Dr. DePace. The Employer convincingly demonstrated that the Claimant's development of coronary [atherosclerosis] was caused by the classic risk factors for the development of coronary [atherosclerosis], including diabetes, high cholesterol, hypertension and obesity. Dr. DePace unconvincingly dismissed or minimized these factors in forming his opinion that the Claimant's [atherosclerosis] was caused by his employment as a firefighter. Dr. DePace was also unaware as to any of the specifics as to the Claimant's job duties as a firefighter, including but not limited to the frequency with which the Claimant fought active fires, the chemicals the Claimant may have been exposed to in the course of fighting fires, and the preventative role the Claimant's use of a self[-]contained breathing apparatus may have played.

10

(WCJ Decision, Finding of Fact No. 10.)  As previously referenced, the WCJ is the final arbiter of witness credibility and evidentiary weight.  Such credibility determinations are binding on appeal, and we will not disturb them.  *See Vols*, 637 A.2d at 714.  Having accepted the testimony of Dr. Gascho, the WCJ had substantial, competent evidence to support her determination that Employer successfully rebutted the presumption of causation under Section 108(o) of the Act.

Accordingly, the order of the Board is affirmed.

_____
P. KEVIN BROBSON, Judge

11

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

David W. Schmidt,                               :
                        Petitioner    :
                                   :
               v.                                :    No. 1887 C.D. 2016
                                   :
Workers' Compensation Appeal          :
Board (City of Allentown),                    :
                    Respondent    :

# **O R D E R**

AND NOW, this 23rd day of October, 2017, the order of the Workers'
Compensation Appeal Board, dated November 8, 2016, is AFFIRMED.

 

                                                    _____

                                               P. KEVIN BROBSON, Judge